<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SANDRA NUNEZ, o/b/o B.P.,

Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

Defendant.

No. 23cv1461 (EP)

**OPINION**

**PADIN**, **District Judge.**

Plaintiff Sandra Nunez, on behalf of her son, B.P.,[1] appeals Defendant Commissioner of Social Security's denial of child's benefits under the Social Security Act (the "Act") and adult Social Security Income ("SSI") benefits. *See* 42 U.S.C. §§ 405(g), 1381, *et seq.*[2] D.Es. 1, 6 ("Pl. Br."). Defendant opposes. D.E. 15 ("Opp'n").[3]

This is the third appeal, after two prior remands for further proceedings. Confronted with at least some of the same issues underpinning the prior remands, this Court will **REVERSE in part** the most recent denial and **REMAND** solely for the calculation of child's benefits. The Court will **AFFIRM** as to the denial of adult benefits.

---

[1] Plaintiff brought the appeal on behalf of her son B.P., the Claimant. For ease of reference, unless otherwise noted, "Plaintiff" refers to the son/Claimant.
[2] This Opinion references the benefits as "child benefits" and "adult benefits," respectively.
[3] Plaintiff's counsel requested oral argument "to further explain how [the Decision] is indistinguishable from the prior two remanded denials and how [Defendant's] mandated policies were utterly ignored or rendered meaningless in order to effectuate [redenial] of this claim." D.E. 6 at 11. However, Plaintiff did not reply to Defendant's opposition. The Court therefore concludes that Plaintiff had nothing more to add, and decides this motion without oral argument. *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78(b).

I.      **PROCEDURAL HISTORY**

A.      **The First ALJ Denies Child Benefits, and Judge Cecchi Reverses and Remands (*Nunez I*)**

On July 27, 2011, Plaintiff's mother Sandra Nunez filed the initial SSI application. *Nunez I*, at *2. The application alleged disability from dysgraphia (a disability affecting the ability to write) and anxiety as of September 1, 2006. *Id.* The Social Security Administration ("SSA") denied the application, and again upon reconsideration. *Id.* After Plaintiff requested de novo review, an ALJ (the "First ALJ") held a hearing on November 15, 2012. *Id.*

On December 27, 2012, the First ALJ denied Plaintiff's SSI application. *Id.*; R.12-24 ("First ALJ Decision"). As relevant here, the First ALJ found at Step Three that "Plaintiff's impairment or combination of impairments do not meet or functionally equal in severity an impairment in the Listings." *Nunez I*, at *5. Specifically, the First ALJ found that Plaintiff had a "less than marked limitation" in all six requisite limitation categories.

The Appeals Council affirmed. *Nunez I*, at *2. Nunez then appealed to this Court, arguing that the First ALJ Decision was not supported by substantial evidence. On August 18, 2016, the Honorable Claire C. Cecchi, U.S.D.J., affirmed in part and reversed and remanded in part. *See Nunez I*. Judge Cecchi found that the First ALJ's findings as to five of six requisite[4] limitation categories precluded meaningful review as follows:

First, in the "Acquiring and Using Information" category, the First ALJ, and the state agency consultants' opinions relied upon, did not consider Plaintiff's dysgraphia or visual motor impairment, which "may affect [Plaintiff's] ability to accomplish key tasks in this area, including "finish[ing] activities" and "complet[ing] classroom and homework assignments." *Id.* at *8.

---

[4] Claimant did not object "to the ALJ's determination that Claimant has a 'less than marked' limitation'" as to "Interacting and Relating with Others." *Nunez I*, at *8.

2

Second, in the "Attending and Completing Tasks" category, the First ALJ, and the opinions relied upon, did not consider Plaintiff's dysgraphia, "decreased visual motor skills," and "deficiency in listening comprehension," which could affect the same key tasks. *Id.*

Third, in the "Moving About and Manipulation of Objects" category, the First ALJ considered Plaintiff's dysgraphia and found evidence of normal motor skills," but did not weigh against that statements from Nunez that Plaintiff could not tie his shoes, button his shirts correctly, use a zipper, or eat by himself using eating utensils. *Id.* at *9.

Fourth, in the "Caring For Oneself" category, the First ALJ again relied on evaluation by state agency consultants who found that Plaintiff had "age appropriate . . . self-care skills," but again did not weigh those findings against Plaintiff's mother's testimony that Plaintiff is unable to tie his shoes, button his shirts correctly, use a zipper, bathe alone, brush his teeth, comb his hair, choose his clothes, or eat by himself using eating utensils. *Id.* at *10-11.

Fifth, in the "Health and Physical Well-being" category, the First ALJ considered Plaintiff's obesity and other physical capabilities, but did not mention Plaintiff's anxiety disorder, for which he was prescribed medication. *Id.* at *11.

"Having found the First ALJ's analysis of [Plaintiff's] impairments in five of the six individual domains precludes meaningful judicial review," Judge Cecchi also remanded for the First ALJ to "determine whether [Plaintiff's] individual impairments, whether singly or in combination, meet or medically equal the severity of a Listing."[5]  *Id.* (citing 20 C.F.R. 416.923).

**B.    A Second ALJ Denies Child and Adult Benefits, and Judge McCann King Reverses and Remands on Both Issues (*Nunez II*)**

On October 19, 2016, the Appeals Council vacated the First ALJ's decision and remanded the case to an ALJ for further proceedings consistent with *Nunez I*. *Nunez II*, at *3. The Appeals

---

[5] "Listing" refers to an impairment on the Listing of Impairments. *See* 20 C.F.R. § 404.1525.

3

Council also consolidated a subsequent claim for Supplemental Security Income ("SSI") benefits filed on Plaintiff's behalf on December 30, 2014, with the earlier application for child benefits. *Id.* A different ALJ (the "ALJ") held an administrative hearing on June 8, 2017, at which Plaintiff, who was represented by counsel, appeared and testified, as did Plaintiff's mother and a vocational expert. *Id.* The ALJ held a supplemental administrative hearing on October 4, 2017, at which Plaintiff's counsel appeared, but Plaintiff did not. *Id.* A vocational expert testified. *Id.*

In a December 13, 2017 decision (the "Second ALJ Decision"), the ALJ concluded that Plaintiff was not disabled at any time between July 27, 2011, and August 1, 2017, the date on which he turned 18 years old, and was therefore not entitled to child benefits. *Id.*; R. 346-371. The ALJ also concluded that Plaintiff was not disabled from August 1, 2017, through the date of the ALJ Decision, and was therefore not entitled to SSI benefits. *Nunez II*, at *3-4.

On July 10, 2020, the Honorable Norah McCann King, U.S.M.J.,[6] also reversed and remanded. The remand pertained to *both* Plaintiff's pre-August 1, 2017 child benefits *and* post-August 1, 2017 adult SSI claims.

C.     **A Third Decision Again Denies Both Child and Adult Benefits**

On August 21, 2021, over a year after Judge King's July 10, 2020 decision, the Appeals Council vacated the Second ALJ Decision and remanded to the Second ALJ. R. 957. After a June 7, 2022 telephonic supplemental hearing,[7] the ALJ—the same ALJ who issued the Second

---

[6] Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. *Nunez II*, at *4.

[7] The ALJ held an initial hearing on March 3, 2022, where Plaintiff's counsel requested reassignment to a different ALJ based on remand. The ALJ denied that request, holding—correctly—that SSA's Hearings, Appeals, and Litigation Law Manual ("HALLEX") directs reassignment to a different ALJ upon a second remand only where the same ALJ issued *both* denials. R. 958; HALLEX I-2-1-55 (emphasis added) (remands "are generally assigned to the same ALJ who issued the decision or dismissal, except" where the Appeals Council "previously

4

Decision—again denied benefits on November 29, 2022. R. 956-993 (the "Decision").[8] As relevant here, the Decision again found that Plaintiff did not have an impairment or combination of impairments that functionally equaled the severity of the Listing. R. 965. Specifically, the Decision found that Plaintiff had "less than a marked" limitation in all six functional domains, including "acquiring and using information." R. 966.

## II.   DISCUSSION

### A.   General Standard of Review

This Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (cleaned up); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 U.S. Dist. LEXIS 49994, at *4 (D.N.J. Mar. 27, 2018). Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (cleaned up); *see K.K.*, 2018 U.S. Dist. LEXIS 49994, at *4.

The substantial evidence standard is deferential; the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter*

---

remanded the case *and the same ALJ issued both prior actions (decision(s) and/or dismissal(s)) in the case.*").

[8] The Appeals Council noted that Plaintiff had filed a subsequent claim for disability benefits on August 21, 2019, with an alleged onset date of August 21, 2019, or shortly after Plaintiff had turned 20. R. 957. Both were denied. Accordingly, the Third ALJ Decision encompassed benefits spanning from September 1, 2006—the earliest onset alleged by the first, July 27, 2011, through August 20, 2019. *Id.*

*Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Halter*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 U.S. Dist. LEXIS 49994, at *4 ("The district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

However, even this deferential standard is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 U.S. Dist. LEXIS 104698, at *3 (D.N.J. Aug. 9, 2016). The Court must "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 U.S. Dist. LEXIS 49994, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (cleaned up)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 U.S. Dist. LEXIS 49994, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

6

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 U.S. Dist. LEXIS 49994, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06.

**B.    Child Benefits**

    *1.    Finding that a child is disabled requires one extreme or at least two marked limitations out of six domains of function*

The SSA examines three requirements in evaluating whether a minor is disabled, namely: (1) that the child is not working; (2) that the child had a "severe" impairment or combination of impairments; and (3) that the impairment, or combination of impairments, was of Listing-level severity, meaning the impairment(s) met, medically equaled or functionally equaled the severity of an impairment in the Listings. *T.C. ex rel. Z.C. v. Comm'r of Soc. Sec.*, 497 F. App'x 158, 160 (3d Cir. 2012) (citing 20 C.F.R. § 416.924(a)).

Here, Defendant recognizes that "Plaintiff's impairments implicated several listings[:] 112.06 (anxiety and obsessive-compulsive disorders), 112.08 (personality and impulse disorders), and 112.11 (neurodevelopment disorders))." To determine whether a child's impairments are medically or functionally equal in severity to an impairment contained in the Listings, the Commissioner assesses all functional limitations caused by the child's impairment(s). *See* 20 C.F.R. § 416.926a(a). In assessing functional limitations, the Commissioner evaluates six domains of functioning: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for

7

oneself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi); 20 C.F.R. § 416.926a(b)(1).

If the child has an "extreme" limitation in one of the six domains or a "marked" limitation in two of the six domains, the child's impairment is functionally equivalent to a listed impairment. 20 C.F.R. § 416.926a(a). A limitation is "extreme" when the impairment "very seriously" interferes with the child's ability independently to initiate, sustain, or complete activities. 20 C.F.R § 416.926a(e)(3)(i). A limitation is "marked" when the impairment "seriously" interferes with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R § 416.926a(e)(2)(i). A marked limitation is more than moderate, but less than extreme. *Id.*

In assessing functional equivalence, whether for child or adult benefits, the ALJ is not required to "use particular language or adhere to a particular format." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Rather, the ALJ must only "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Id.*

2. *The ALJ's evaluation still evades meaningful review*

With respect to Plaintiff's child benefits, Judge King's central holding was that the ALJ erred by failing to consider a questionnaire completed by Plaintiff's teacher (the "Questionnaire"). *Nunez II*, at *21; R. 166. Plaintiff argues that the Decision likewise evades meaningful review by failing to consider the proper criteria, ignoring Plaintiff's documented obesity, and again failing to properly consider a teacher questionnaire (the "Questionnaire"). The Court agrees.

The Questionnaire, a form issued by SSA's Division of Disability and Determination Services, was directed to the McGinnis School in Perth Amboy, New Jersey. *Nunez II*, at *21. The Questionnaire was undated and did not identify its author, but did indicate that the author "had known Plaintiff for eight months at the time the questionnaire was completed and had taught

8

Plaintiff in four 42-minute classes—language arts, reading/writing, Social Studies, and science—five days per week." *Id.*

In the domain of acquiring and using information, the author used a rating scale from 1 to 5: 1 indicates "no problem," 2 a "slight problem," 3 an "obvious problem," 4 a "serious problem," and 5 a "very serious problem." R. 167. The Questionnaire's author identified problems in nearly every category, including a "very serious problem" in understanding and participating in class discussions" and a "serious problem" in "providing organized oral explanations and adequate descriptions" and in "expressing ideas in written form." *Id.*

However, the ALJ assigned "little weight" to the Questionnaire because it was "undated and not signed" and "not written by a medical source." R. 353. Judge King agreed with Plaintiff that this was an improper basis to reject the Questionnaire. *Nunez II*, at *22-23. Judge King also agreed with Plaintiff that SSA itself solicited this information from Plaintiff's school, and that the Questionnaire "provides sufficient context by identifying the author as a teacher who had observed Plaintiff in four 42-minute classes, five days per week, over the course of eight months." *Id.* at *23. Thus, "the specific identity of the teacher should not have been regarded as critical, particularly where the child disability regulations specifically require consideration of reports from such sources." *Id.*

Judge King recognized that the Questionnaire reflected "moderate" or "no limitations" in the remaining five domains, *i.e.*, the domains other than "acquiring and using information," and thus that Plaintiff must be found to have an "extreme" limitation in that domain to functionally equal a Listing. *Id.* at *26-27. However, because Judge King could not discount the "possibility that the [Q]uestionnaire, if properly considered, would not have changed [the Second ALJ's]

9

disability determination" by helping to identify that "extreme" limitation, Judge King remanded for reconsideration of that issue. *Id.* at *27.

The ALJ's analysis of the Questionnaire remains largely the same. The Decision, like its predecessors, reiterates that the Questionnaire is undated, unsigned, and not written by a medical source. R. 975. The Decision states that, "pursuant to the District Court's remand," the Second ALJ "reevaluate[d] the questionnaire**s** at issue and finds while the questionnaire**s** are given partial weight in supporting the Plaintiff's limits in Domains 1 [acquiring/using information] and 2 [attending/completing tasks] with respect to the childhood claim, the opinions are not dispositive as they are not consistent with the assessments of Plaintiff's special education English Teacher and other evidence of record." *Id.* (emphasis added).

However, as Plaintiff highlights, *how* the Questionnaire is inconsistent remains unclear. The "special education English Teacher" assessment refers to the January 12, 2015 report of Special Education English Teacher Tina Landi (the "Landi Report"). *See* R. 669-676. The Decision notes the Landi Report's opinion that "in the domain of acquiring and using information, Plaintiff ranged from having no problem to having obvious problems. . . . [Plaintiff] needed directions repeated and reworded at times." R. 975. The Decision likewise notes the Landi Report's opinion that "in the domain of interacting and relating with others, [Plaintiff] had an obvious problem in one area, introducing and maintaining relevant and appropriate topics of conversation." *Id.* at 976. Otherwise, the Landi Report generally found no or slight problems in other domains. *Id.* at 975-76.

As Plaintiff argues, the Decision does not opine further, weigh the evidence, or identify precisely *how* the Questionnaire is inconsistent with the Landi Report. Indeed, the Decision itself identified Plaintiff's "obvious problem" in the "domain of acquiring and using information." R.

10

975. Elsewhere in the Decision, in a section explicitly addressing Plaintiff's ability to "acquir[e] and us[e] information," the Decision omits the Questionnaire entirely, and notes the Landi Report's finding of an "obvious problem with acquiring and using information" without detailing why those findings were disregarded in favor of other evidence. R. 981.

To the extent that the Decision also identifies "other evidence of record . . . not consistent with" the Questionnaire, R. 975, it is unclear precisely which "other evidence" this refers to. The Decision cites several sources thereafter, each unhelpful.

For example, the Decision first cites Plaintiff's May 25, 2011, neuropsychiatric evaluation by Dr. Ira Morganstern. R. 975. The Decision essentially recites portions of Dr. Morganstern's report; much of it was unremarkable, but the Decision acknowledged Plaintiff's "subjective feelings of anxiety" and Dr. Morganstern's diagnosis: "anxiety disorder not otherwise specified." *Id.*; R. 215. As with the Landi Report, the Decision does not opine further, or explain how Dr. Morganstern's report is inconsistent with the Questionnaire, acknowledged by the Decision to have demonstrated that Plaintiff "has limits in Domains 1 and 2." R. 975.

Next, the Decision appears to highlight some measure of improvement in Plaintiff's later childhood. For example, at the June 8, 2017, hearing, *i.e.*, the hearing after Judge Cecchi's remand, Plaintiff acknowledged "having A's and B's as his grades in school." R. 976. Additionally, while Plaintiff had previously been eligible for speech, language, and occupational therapy, "he was later dismissed" from these services. *Id.* Plaintiff "made excellent gains in areas of handwriting, fine and visual motor skills, core strength and coordination, [and] no longer became tired, and his neck and shoulder muscles no longer hurt when he wrote." *Id.* As before, however, the Decision does not explain how this evidence impacts the ultimate findings, including as to the domains of acquiring and using information and interacting and relating with others.

11

The Decision also cites numerous administrative disability determination reports finding a less than marked" limitation. *See* R. 977 (citing Record Exs. 2A, 7A, 10A). But these reports are equally problematic; like the Decision, the reports cite the Questionnaire but concludes a "less than marked" limitation without any further explanation. *See*, *e.g.*, R. 455-56 ("TQ reports an obvious or less problem in this domain."). To cite just one example, examiner Howard Mangel's report identified a less than marked limitation in the "attending and completing tasks" domain despite finding that the "New [teacher questionnaire] ratings indicate more significant problem than previously rated," and that Plaintiff's "dyslexia and dysgraphia problems appear to significantly hamper him." R. 475.

Zero (the Decision failing to weigh the Questionnaire) multiplied by zero (the reports failing to weigh the Questionnaire) is zero. Accordingly, remand is again warranted.

    3.    *The Decision did not sufficient consider obesity in the context of Plaintiff's other impairments*

Plaintiff also argues that the Decision did not evaluate Plaintiff's obesity correctly, *i.e.*, consider it in the context of other impairments. Pl. Br. at 40-42. Defendant counters that there was no evidence that Plaintiff's obesity caused any marked functional limitations, and conversely that substantial evidence supports the ALJ's finding that Plaintiff's obesity was not severe. Opp'n at 13. The Court agrees with Plaintiff that the Decision's discussion of obesity is not sufficient to permit meaningful review.

Throughout this litigation's lengthy history, SSA guidance regarding obesity has remained materially consistent. In 2000, the Commissioner removed obesity as a "listed impairment," but the Third Circuit has recognized that this action "did not eliminate obesity as a cause of disability." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009) (citing SSR 00-3p, 65 Fed. Reg. 31039, 31040-42 (May 15, 2000)). "To the contrary, the Commissioner promulgated SSR 00-3p,

12

2000 SSR LEXIS 5, indicating how obesity is to be considered. This SSR replaced an automatic designation of obesity as a listed impairment, based on a claimant's height and weight, with an individualized inquiry, focused on the combined effect of obesity and other severe impairments afflicting the claimant[.]" *Id.*

"[A]n ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step. *Diaz*, 577 F.3d at 504. For meaningful judicial review, the ALJ must provide a discussion of the evidence and an explanation of reasoning, . . . but [courts] do not 'require the ALJ to use particular language or adhere to a particular format in conducting his analysis[.]'" *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 765-66 (3d Cir. 2016) (quoting *Jones*, 364 F.3d at 505). However, "[c]onclusory statements that a condition does not constitute the medical equivalent of a listed impairment are insufficient." *Diaz*, 577 F.3d at 504.

"Although SSR 00-3p was superseded by SSR 02-1p, SSR 02-1p, did not materially amend SSR 00-3p." *Id.* (cleaned up); *see also* SSR 00-3p, 65 Fed. Reg. 31039-01 (May 15, 2000). "[O]besity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a Listing." *Id.* And as particularly relevant here, this "may . . . be true for [non-physical] coexisting or related impairments, *including mental disorders*." *Id.* (emphasis added); *see* 2000 SSR LEXIS 5, at *8, 17 ("Obesity may also cause or contribute to mental impairments such as depression. The effects of obesity may be subtle, such as the loss of mental clarity and slowed reactions that may result from obesity-related sleep apnea. . . . In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity.").

More recently, SSR 19-2p rescinded and replaced SSR 02-1p, effective May 20, 2019. *See* 2019 SSR LEXIS 2. This provision likewise indicates that "o[b]esity also increases the risk of developing impairments including . . . Mental impairments (for example, depression)." *Id.* at *7-8. The Decision cited these most recent guidelines.

Defendant argues that "substantial evidence supports [the ALJ's] finding that Plaintiff's obesity was not severe." Opp'n at 14. Defendant further argues that the record shows no physical or mental limitations stemming from Plaintiff's obesity, and in any event that Plaintiff did not claim disability due to his weight. *Id.* (citing R. 985 (finding that Plaintiff "had not alleged disability due to his weight"). As to the latter point, both Judge Cecchi and Judge King recognized that Plaintiff had, in fact, invoked obesity. *See Nunez I*, at *11 (emphasis added) ("[Plaintiff] contends that the [First] ALJ's determination in this domain failed to account for [Plaintiff's] anxiety *and obesity*."); *Nunez II*, at *14 (noting that ALJ's decision found that obesity was not a severe impairment). Indeed, the ALJ's first decision, *i.e.*, the decision remanded by *Nunez II*, discussed obesity throughout. *See* R. 351, 360, 366.

But here, as Plaintiff points out, the Decision invoked SSR 19-2p without applying it in any meaningful way to Plaintiff. For example, in one passage, the treatment is merely a general recitation of the guidelines:

> [A]lthough there is no specific medical listing regarding obesity, the undersigned has evaluated that impairment herein pursuant to the extensive and detailed guidelines set forth in SSR 19-2p, which notes that obesity could complicate impairments of the musculoskeletal and other body systems, and could cause or contribute to limitation of exertional functions (e.g., standing, walking) and postural functions (e.g., climbing, crawling). SSR 19-2p further acknowledged that the combined effects of obesity with other impairments might be greater than would be expected without obesity.

R. 964.

Thus, despite having previously addressed obesity, despite the matter having been remanded twice for a more fulsome discussion of the severity of Plaintiff's mental limitations, and despite SSA's guidelines providing that obesity can increase the severity of mental impairments, the Decision's discussion of obesity in the context of Plaintiff's recognized mental impairments remains insufficient to permit meaningful review. This also merits remand.

> 4. *The appropriate remedy is remand solely for the calculation of benefits*

Where a remand is appropriate, courts are not limited to ordering a remand solely for further proceedings. Instead, "courts 'may choose to remand to the Secretary for a further hearing or simply...award benefits.'" *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 357-58 (3d Cir. 2008) (quoting *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984)). Deciding whether to remand for further proceedings or simply to award benefits requires weighing two factors: the delay, and the record. *Diaz v. Berryhill*, 388 F. Supp. 3d 382, 391-92 (M.D. Pa. 2019).

First, the delay. It is true that disability determinations take time. *Beirouti v. Comm'r of Soc. Sec.*, No. 20 CV 5006, 2021 U.S. Dist. LEXIS 244967, at *1 (E.D.N.Y. Dec. 21, 2021) ("Among the many ills associated with appeals of Social Security disability determinations is the problem of delay."). Courts measure this delay both in terms of the passage of years and by reference to whether there have been prior appeals and remands. *Diaz*, 388 F. Supp. 3d at 391-92. Delays of several years involving one or two prior remands have been found to constitute excessive delays. *See e.g., Brownawell v. Comm'r of Soc Sec.*, 554 F.3d 352, 358 (3d Cir. 2008) (benefits awarded after 8-year delay and 2 prior remands,); *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984) (award of benefits after two appeals, 5½ year delay); *Halloran v. Berryhill*, 290 F. Supp. 3d 307, 321 (M.D. Pa. 2017) (4-year delay, benefits awarded). Here, this matter spans over a

15

decade and two remands between Plaintiff's initial application and the Decision. An additional remand, which would require reassignment to a third ALJ, would simply delay matters further.

The second factor is the record, and specifically whether it is fully developed and substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to be benefits. *Gilliland v. Heckler*, 786 F.2d 178 (3d Cir. 1986). These requirements are met whenever the court finds the record, including the medical opinion evidence, to be "extensive and well developed." *Diaz*, 388 F. Supp. 3d at 391; *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 358 (3d Cir. 2008) (remanding for award where claimant's "treating physician for over three years, twice opined that a finding of disability was justified"); *Nazario v. Comm'r Soc Sec.*, 794 F. App'x 204, 212 (3d Cir. 2019) (remanding to award benefits where the record "is unlikely to benefit from further development" because the vocational expert's answers already "contained substantial evidence that the claimant suffered from a severe mental disability that rendered her unable to engage in substantial gainful activity").

Here, the record is unquestionably complete, and unlikely to benefit from any further exploration. Indeed, Defendant makes no credible argument that a fourth hearing would result in a different outcome. Moreover, an examination of the record reveals that there is sufficient evidence in the record to conclude that Claimant did, as a child, have some functional limitations that could constitute disability.

Accordingly, and in light of the substantial delays to date, the Court finds that Claimant was disabled as a child, that a remand for further proceedings would serve no purpose, and will **REMAND** for calculation of child benefits only. *See Leonard v. Kijakazi*, No. 20-cv-2832, 2022 U.S. Dist. LEXIS 55685, at *11-12 (E.D.N.Y. Mar. 28, 2022) (remanding for calculation of benefits only after finding nine-year delay, sufficient evidence of disability, and no credible

argument that further evidentiary proceedings would change the outcome); *Williams v. Barnhart*, 314 F. Supp. 2d 269, 272-73 (S.D.N.Y. 2004) (remanding solely for calculation of benefits because remanding for further proceedings to correct ALJ's application of incorrect legal standard would "serve no useful purpose and only further delay an award of benefits to a child who has already been waiting several years since his claim was filed").

C. **The Court Will Affirm the Denial of Adult Benefits Because Substantial Evidence Exists in the Record to Support the Denial**

*1. Sequential evaluation process for adult claims*

The Act establishes a five-step sequential evaluation for determining whether an adult plaintiff is "disabled" within the meaning of the statute. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, the inquiry ends; the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, the inquiry ends; the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R § 416.920(d). If so, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or

is expected to last for a continuous period of at least 12 months. *Id.* at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends; the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, where the Commissioner bears the burden, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g).

> 2. *Substantial evidence supports the decision's holding that Plaintiff did not demonstrate disability into adulthood*

Judge King also reversed and remanded the portion of the Second Decision denying Claimant's adult benefits. Specifically, Judge King found that, as with child benefits, the Second Decision's failure to properly evaluate the Questionnaire "deprives this Court of meaningful judicial review of the claim for adult benefits." *Nunez II*, at *28-29.

Plaintiff essentially restates the same arguments for adult benefits as for child benefits: that the Decision failed to articulate any rationale for its determination that Plaintiff had no adult physical or mental restrictions, and thus that Plaintiff had the RFC to:

> (1) perform a full range of work at all exertional levels but with the following nonexertional limitations:
>
> The claimant:
>
> (2) can understand and execute simple, routine and repetitive tasks
> (3) when production is measured no earlier than the end of the work day;
> (4) have occasional contact with coworkers and supervisors;

    (5) can work around others, but not on tasks requiring teamwork or working in tandem;
    (6) have incidental contact with the public but not with tasks that involve direct customer service;
    (7) make simple decisions and adapt to occasional changes in essential work tasks.
    (8) The claimant will be off task 10 percent of the workday due to impairments.

R. 989 (cleaned up).

  Defendant argues that "substantial evidence supports the [Decision]" finding that Claimant was not disabled as an adult, from August 2017 through August 2019. Opp'n at 17.

  Unlike the child benefit claims, which are well documented but not adequately discussed, the ALJ's findings as to the adult claims are well-supported, particularly by more recent evidence. As the ALJ found, "there is limited medical evidence since [Claimant] attained age 18." R. 989. But what evidence there is paints a picture of an individual who received the assistance he needed for any psychological impairments, and demonstrates no, or extremely limited, impairments. The ALJ noted and discussed at length more recent physical and psychological examinations in 2020. R. 990. Those examinations revealed, despite evidence of obesity—Claimant's BMI is 42.7 based on a height of 5'9" and a weight of 289 pounds—that Claimant could "walk far and take care of his personal hygiene," a normal physical examination, and a normal electrocardiogram and x-rays. *Id.* Claimant had "no urgent care, emergency room, or inpatient hospital visits since 2017." R. 991.

  Similarly, in a 2020 psychological evaluation, Claimant "endorsed anxiety," but also noted that he "walked everywhere, . . . had friends with whom he could talk and text, . . . reported getting along well with family[,] . . . and was taking 12-15 credits at Middlesex Community College." R. 990. He had also applied for five jobs online without assistance. R. 991. Plaintiff has not identified any countervailing adult records, pertaining to either Claimant's psychological or

19

physical impairments, that the ALJ should have considered. Accordingly, there is no basis to disturb the ALJ's findings as to the adult claims.

Accordingly, there is no basis to disturb the portion of the Decision denying Claimant's adult benefits. The Court will therefore **AFFIRM** that portion of the Decision.

### III.   CONCLUSION

For the reasons above, Plaintiff's appeal will be **GRANTED in part**, the ALJ's denial of benefits will be **VACATED** as to child benefits, and the matter will be **REMANDED** to the SSA solely for the calculation of child benefits for the entire covered childhood period.[9] Plaintiff's appeal as to adult SSI benefits will be **DENIED**, and the ALJ's Decision on that issue will be **AFFIRMED**. An appropriate Order follows.

Dated**:** March 26, 2024

Evelyn Padin, U.S.D.J.

---

[9] This award should happen expeditiously, and in any event in no more than 60 days.